RECEIVED
IN LAFAYETTE, LA.
JUN 2 2 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **PAUL W. DARBONNE, JR.** | * | **CIVIL ACTION NO. 03-1989** |
| **VERSUS** | * | **MAGISTRATE JUDGE HILL** |
| **CHAD GAUDET, ET AL** | * | **BY CONSENT OF THE PARTIES** |

## MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment filed on May 2, 2005 (rec. doc. 48) by defendants, Sid Hebert, individually and in his official capacity as Sheriff of Iberia Parish ("Hebert"), and Chad Gaudet, individually and in his official capacity as a Deputy Sheriff of Iberia Parish ("Gaudet"). Plaintiff, Paul W. Darbonne, Jr. ("Darbonne"), has filed opposition. (rec. doc. 50). Pursuant to the Court's Order of May 25, 2005, Darbonne submitted an additional memorandum in support of his Section 1983 and 1985 claims. (rec. doc. 54). For the reasons set forth below, the motion for summary judgment is **GRANTED**.

### Background

Plaintiff, Paul Darbonne, Jr. ("Darbonne"), brought this civil rights action under 42 U.S.C. § 1981, 1983, and 1985; the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and Louisiana Civil Code Articles 2315, 2316, and 2320, against Hebert, Gaudet, Richard D. Daigle and Johnette

Daigle.[1] Richard Daigle is married to Johnette Daigle, who is Darbonne's ex-wife.

Darbonne alleges that defendants conspired to physically and emotionally abuse, wrongfully prosecute, imprison, threaten and harass him. Specifically, he alleges: (1) that defendants conspired with Assistant District Attorney Ralph "Bud" Lee, Judge William Douglas Hunter, Judge Gerald Wattigney and others in the Iberia Parish Sheriff's Office and the Iberia Parish District Attorney's Office to harass Darbonne and deprive him of his civil and constitutional rights; (2) that defendants conspired to file frivolous and harassing criminal charges of cyberstalking and telephone harassment against him; (3) that Gaudet, who was a close friend of defendant, Richard Daigle, continued to harass Darbonne after the two criminal prosecutions had concluded; (4) that Richard Daigle attacked, assaulted and battered Darbonne on September 21, 2003 pursuant to the conspiracy; (5) that despite calls by Darbonne and his sister-in-law, Betty Freeman, to Hebert, Ron Durand and Todd D'Albor of the Iberia Parish Sheriff's Department to complain of Gaudet's harassment, no investigation or reprimand occurred; (6) that Hebert, along with several deputies and employees, knew of the harassment, yet knowingly approved of, condoned, authorized and acquiesced in Gaudet's behavior; (7) that defendants, in the

---

[1] All claims against defendants, Larry Crochet and Judy Crochet, who are Darbonne's former in-laws, were dismissed by Judgment entered July 13, 2004. (rec. doc. 44).

course of the conspiracy and wrongful acts alleged, made improper use of the offices of the Iberia Parish Sheriff, the District Attorney, and Judges William Douglas Hunter and Gerald Wattigney; and (8) that Hebert intentionally, knowingly and recklessly failed to properly train Gaudet, failed and refused to supervise, control or instruct Gaudet, and failed to otherwise hold Gaudet accountable for his wrongful actions against Darbonne. (Rec. doc. 48 ¶ 3, Statement of Material Facts at Issue). Darbonne asserts that one of the goals of this conspiracy was to deprive him of the custody of his children.

On May 2, 2005, Hebert and Gaudet filed the instant motion for summary judgment asserting that: (1) any cause of action based on facts which occurred more than one year before the filing of this action on October 24, 2003 had prescribed;[2] (2) Darbonne was judicially estopped from asserting pre-petition claims that were not disclosed in his bankruptcy petition filed on September 11, 2002, and (3) defendants' actions were not conducted under color of law as required by 42 U.S.C. § 1983.

---

[2]Darbonne does not address the prescription argument in his opposition. Because the Court finds that Darbonne is judicially estopped from asserting any claims arising prior to the filing of his bankruptcy on September 11, 2002, the prescription argument will not be addressed.

## Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When the burden at trial rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case. *International Association of Machinists and Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A.*, 199 F.3d 796, 798 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Courts consider the evidence in the light most favorable to the nonmovant, who must be given the benefit of all inferences that might reasonably be drawn in his favor. However, such inferences must be within the range or reasonable probability. *Love v. Pritchard,* 784 F.2d 708, 711 (5th Cir. 1986). Unsubstantiated assertions, improbable inferences and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003). The nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial. *Id.* (citing *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

After the nonmovant has been given an opportunity to raise a genuine factual issue,

if no reasonable juror could find for the nonmovant, summary judgment will be

granted. *Id.* (citing *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2458.))

## ANALYSIS

### Judicial Estoppel

Defendants argue that Darbonne is judicially estopped from pursuing this

action because he failed to disclose it to the bankruptcy court at the time that he filed

his petition under Chapter 7 of the Bankruptcy Act, 11 U.S.C. § 701 *et seq.* Judicial

estoppel is "a common law doctrine by which a party who has assumed one position

in his pleadings may be estopped from assuming an inconsistent position." *Jethroe*

*v. Omnova Solutions, Inc.*, No. 04-60557 (5th Cir. June 13, 2005) (quoting *In re*

*Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)). The purpose of the doctrine

is to protect the integrity of the judicial system, by preventing parties from playing

"fast and loose" with the courts to suit their own self-interest. *In re Coastal Plains,*

*Inc.*, 179 F.3d at 205. The doctrine is an equitable one, and the decision whether to

invoke it is within the court's discretion. *Id.*; *Casey v. Peco Foods, Inc.*, 297 B.R. 73,

75 (S.D. Miss. 2003).

The record reflects that Darbonne filed a petition under Chapter 7 of the

Bankruptcy Act on September 11, 2002, with a discharge being granted on December 23, 2002. (rec. doc. 48, Exhibit "A"). The potential cause of action against defendants is not mentioned in those proceedings and was not disclosed by plaintiff. Judicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset. *Jethroe, supra.*

Darbonne admits that he filed a petition in the bankruptcy court on September 11, 2002. However, he asserts that at the time he filed for bankruptcy, he "had no intention of filing suit against the defendants." Nevertheless, Darbonne agrees that he is judicially estopped from asserting pre-petition claims that were not disclosed in the bankruptcy proceedings. (rec. doc. 50-1 and 54).

The Bankruptcy Code and Rules impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, *"including contingent and unliquidated claims"*. (emphasis in original). *Coastal Plains*, 179 F.3d at 207. "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action". *Id.* (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F.Supp. 859, 867 (E.D. Tex. 1996)). " 'The debtor need not know all the facts or even the legal basis of the cause of action; rather if the debtor has enough information ... prior to confirmation to suggest that it may

have a possible cause of action, then that is a "known" cause of action such that it must be disclosed' ". *Id.* (brackets omitted; quoting *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus., Inc.)*, 183 B.R. 812, 821 n. 17 (Bankr.N.D.Ill. 1995)). *"Any claim with potential must be disclosed*, even if it is 'contingent, dependent, or conditional'". *Id.* (quoting *Westland Oil Dev. Corp. v. MCorp Management Solutions, Inc.*, 157 B.R. 100, 103 (S.D. Tex. 1993)) (emphasis added).

Here, many of the key facts relied on by plaintiff, including Darbonne's alleged wrongful arrests and imprisonments, occurred *prior* to the bankruptcy filing. The Complaint alleges that on December 13, 2001, Darbonne allegedly overheard Gaudet state that he was "going to set [Darbonne] up for good. I'm going to put him away." (rec. doc. 1, ¶ 1). That same night, Darbonne and his wife allegedly witnessed Gaudet planting drugs in Darbonne's pickup truck. (Rec. doc. 1, ¶¶ 2, 3). The next day, December 14, 2001, Darbonne was arrested, handcuffed, allegedly beaten, and later jailed by Gaudet. (rec. doc. 1, ¶¶ 4, 5, 6, 10).

This alleged wrongful conduct was the catalyst for this lawsuit. In fact, Darbonne states in the Complaint that this arrest "was the formal beginning of frivolous criminal proceedings" brought against him. (rec. doc. 1, ¶ 13). Another incident described in the Complaint, a wrongful arrest and false imprisonment for telephone harassment, allegedly occurred between August 2-29, 2002. (rec. doc. 1,

¶¶ 16-18). Both of these allegedly false arrests and imprisonments are alleged in the Complaint to have occurred *prior* to Darbonne's bankruptcy filing on September 11, 2002.

Although Darbonne argues that he had "no intention" of filing suit at the time that he filed for bankruptcy, he certainly had enough information at that time to suggest that he might have a possible cause of action. The first alleged wrongful arrest and false imprisonment was at least enough to suggest a potential lawsuit; the second arrest definitely alerted Darbonne to a potential claim.

Courts in numerous cases have precluded debtors or former debtors from pursuing claims about which the debtor had knowledge, but did not disclose, during the debtors' bankruptcy proceedings. *Jethroe, supra*; *Coastal Plains*, 179 F.3d at 209 (citations omitted). As the Fifth Circuit noted, in view of the heightened need for full and honest disclosure in a bankruptcy proceeding, "the importance of this disclosure duty cannot be overemphasized." *Coastal Plains*, 179 F.3d at 209. Thus, this Court finds that Darbonne is precluded from pursuing any claims arising from acts occurring prior to September 11, 2002, due to his failure to disclose them to the bankruptcy court. Darbonne apparently agrees with this result. (rec. doc. 50-1 and 54).

Accordingly, summary judgment on the basis of judicial estoppel for all acts

committed prior to September 11, 2002, is **GRANTED**.

## Civil Rights Claims

### Section 1985

Darbonne argues that all of the facts, including those that occurred prior to his bankruptcy filing, are still relevant to his allegations of conspiracy and are admissible to show the pattern of behavior by the Sheriff's office and its employees. He has asserted a claim for conspiracy against the defendants under 42 U.S.C. § 1985(3).

To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Hilliard v. Ferguson*, 30 F.3d 649, 652-53. (5th Cir. 1994). The plaintiff must show that the conspiracy was motivated by a discriminatory animus based on race or some other inherited or immutable class characteristic such as gender, religion or national origin or based upon political association or beliefs. *Id.*; *Sullivan v. County of Hunt, Texas,* 106 Fed.Appx. 215, 220 (5th Cir. 2004) (unpublished opinion) and authorities cited therin.

To survive summary judgment on a Section 1985(3) conspiracy claim, a

plaintiff must show an actual violation of his rights or an agreement by the defendants to commit an illegal act. *McCall v. Peters*, 108 Fed.Appx. 862, 863, 2004 WL 1842567 (5th Cir. 2004) (unpublished opinion). Here, Darbonne has alleged a "conspiracy" for the purpose of depriving him of "equal protection of the laws." Cited examples of acts showing this conspiracy are Gaudet's planting drugs in Darbonne's pickup truck and numerous instances of stalking by Gaudet. Because the alleged drug planting incident occurred prior to the bankruptcy filing, Darbonne is judicially estopped from pursuing a claim based on this alleged act.

Regarding the post-bankruptcy evidence, the only acts cited are Gaudet's stalking and harassment of Darbonne. As discussed below, these acts do not rise to the level of a due process violation. Thus, Darbonne has not shown an actual violation of his rights such as to state a civil conspiracy claim under Section 1985(3). *McCall,* 108 Fed.Appx. at 863.

Most significantly, Darbonne has not asserted that the conspiracy was motivated by a racial or class-based animus. *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998). Additionally, he has not produced any evidence to support this element. Rather, Darbonne's § 1985(3) claim is based on the theory that defendants had a personal motivation for depriving him of the custody of his children, rather than a race-based motivation. Accordingly, the Court finds that Darbonne

cannot prove a claim against the defendants under § 1985.[3]

**Section 1983**

The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides that any person who, *"under color of state law,"* deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured...." (emphasis added). To recover under § 1983, a plaintiff must prove: first, that he was deprived of a right or interest secured by the Constitution and laws of the United States, and second, that the deprivation occurred by someone acting under the color of state law. *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 203 (5th Cir. 1996). Defendants assert that Darbonne has failed to produce evidence that the acts which occurred after September 11, 2002, were done under color of state law. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Causey*, 185 F.3d 407, 415 (5th Cir. 1999). That is, a defendant acts under color of state law if he misuses or abuses his official power, and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Id.*; *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). If,

---

[3]The Court allowed plaintiff additional time in which to specifically plead the elements of a Section 1985(3) conspiracy. (rec. doc. 51). The plaintiff's pleading in response wholly failed to plead the elements necessary to support a Section 1985(3) conspiracy. (rec. doc. 54).

however, a state officer pursues personal objectives without using or misusing the power granted to him by the state to achieve a personal aim, then he is not acting under color of state law. *Townsend, supra* (citing *Harris v. Rhodes*, 94 F.3d 196, 197 (5th Cir. 1996)).

Defendants assert that Gaudet's alleged actions occurring after September 11, 2002 involved personal or family disputes, and were not conducted "under color of state law." These included incidents in which Gaudet drove by Darbonne's residence, parked and watched him. In response, Darbonne asserts that other wrongful acts were committed "under color of state law" subsequent to his filing bankruptcy, including an incident in which Gaudet stood in his yard and made obscene gestures toward Darbonne and his grandmother, wife and two minor children (Complaint, ¶ 20); the Sheriff's Department's failure to take any action regarding this incident after Darbonne's grandmother filed a complaint (Complaint, ¶ 20); defendants' continued prosecution of the cyberstalking case, which was ultimately dismissed on July 31, 2003 (Complaint, ¶¶ 14, 15); defendants' continued prosecution of the telephone harassment case, which ultimately resulted in Darbonne's acquittal on May 14, 2003 (Complaint, ¶¶ 16-19),[4] and Gaudet's continued driving by and parking near

---

[4] In the Complaint, Darbonne asserts that his former in-laws, the Crochets, pushed the prosecution of the cyberstalking and telephone harassment charges. (Complaint, ¶¶ 15, 16). As previously stated, the Crochets have been dismissed from this suit.

Darbonne's house and staring at Darbonne, and driving his police car into Darbonne's driveway, then "peeling out", that is, driving off fast. (Complaint, ¶ 19).[5] (rec. doc. 50, ¶ 4).

As argued by the defendants, many of the acts complained of by plaintiff apparently occurred outside of the parish where Gaudet was a deputy sheriff. The acts of harassment and/or stalking alleged to have been committed by Gaudet had no real connection to his official status, but were rather acts which any citizen could have performed to harass a fellow citizen.

In *Townsend*, 291 F.3d at 861, the court noted that misuse of power possessed by virtue of state law and made possible *only* because of the wrongdoer is clothed with the authority of state law is action "taken under color of state law." (emphasis added). If a state officer pursues personal objectives without using or misusing the power granted to him by the state to achieve a personal aim, he is not acting under state law. *Id.* at 861.

Here, those acts occurring after the filing of the bankruptcy petition were not a misuse of that power which Gaudet possessed by virtue of state law. Rather, there

---

[5]Darbonne also referred to Richard Daigle's assault and battery of him on September 21, 2003 as one of these incidents. (Complaint, ¶ 21). However, Daigle as a private individual was not acting under of color of state law, and is not a party to this motion, and thus, this allegation is irrelevant.

was no misuse of power granted to Gaudet by virtue of his position as a deputy sheriff. Accordingly, the actions allegedly taken by Gaudet, as boorish and as juvenile as they might have been, were not performed under color of state law and therefore they are not actionable under Section 1983. Summary judgment is therefor appropriate.

Furthermore, an underlying constitutional or federal statutory violation is a predicate to liability under § 1983. *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989). It is clear that Darbonne cannot prove a constitutional or federal statutory violation and therefore summary judgment is also appropriate on that basis.

In the Complaint, Darbonne asserted a Section 1983 cause of action based on alleged violations of the fourth, eighth and fourteenth amendments to the Constitution. (rec. doc. 1, "Jurisdictional Statement"). On January 26, 2004, the Court issued an Order requiring plaintiff to file a Fed.R.Civ.P. 7(a) reply to defendants' qualified immunity defense, in which plaintiff was directed to state as to each defendant "the constitutional rights that said defendant personally violated." (rec. doc. 13). In the Rule 7(a) Reply, however, Darbonne failed to identify these alleged constitutional violations as directed in the Order. (rec. doc. 24). Accordingly, on May 25, 2005, the Court ordered Darbonne to brief or present evidence to support

his claims under §§ 1983 and 1985. (rec. doc. 51).

Responding to the Order, Darbonne submitted a Memorandum in Support of Sec. 1983 and Sec. 1985 Actions (rec. doc. 54), in which he acknowledged that a plaintiff must first establish the violation of a constitutional or federal statutory right before he may recover under Section 1983. Plaintiff argues that "[g]ross negligence, recklessness, callous indifference and intentional conduct have been held to meet the requirement of turning what might be considered a tort into a deprivation of a "Constitutional right,'" citing *Daniels v. Williams*, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344 (1986), and *Love v. King*, 784 F.2d 708 (5th Cir. 1986). (rec. doc. 54, p. 3).

The Fifth Circuit has held that "mere negligence is insufficient to establish an abuse of power by a state official in the context of the Fourteenth Amendment: such conduct, by itself, does not violate an individual's substantive due process rights." *Love*, 784 F.2d at 712. Darbonne alleges that after the filing of the bankruptcy petition that he was stalked and harassed by Gaudet. However, Darbonne has cited no case holding that stalking/or and harassment is a violation of a federally protected constitutional or statutory right. The undersigned is aware of no case so holding.

Clearly, plaintiff's claims that Gaudet engaged in a pattern of harassment and stalking does not plead a violation of either the Fourth or Eighth Amendments to the

Constitution; the plaintiff apparently makes no such argument. A review of plaintiff's latest attempt to plead a constitutional violation seems rather to plead that Gaudet's alleged harassing and stalking of plaintiff violates plaintiff's substantive due process rights under the Fourteenth Amendment. In that regard, plaintiff relies on *Daniels, Davidson,* and *Love, supra.* In *Love,* the Fifth Circuit, relying on its prior precedent, noted that "mere negligence" is insufficient to establish a cause of action against a state official in the context of an individual's substantive due process rights under the Fourteenth Amendment as distinguished from a claim brought under a particular substantive right enumerated in the Bill of Rights and made applicable to the states through the Fourteenth Amendment. *Id.* at 712 and n. 5.

In *County of Sacramento v. Lewis,* 118 S.Ct. 1708 (1998), the Supreme Court, in analyzing its prior decisions on the issue, recognized that the core of the due process concept was the protection against arbitrary action and that the Due Process Clause was intended to prevent government officials from employing governmental power as an instrument of oppression. *Id.* at 1716. In that regard, the Court recognized that the cognizable level of executive abuse of power was that which "shocks the conscience." *Id.* at 1717. Therefore, the due process guarantee does not impose liability every time someone cloaked with state authority causes harm. *Id*

The Fifth Circuit has spoken of this conscience shocking standard as, *at a minimum*, acting with deliberate indifference toward the plaintiff, that is, acting with knowledge of, and disregard for, an excessive risk to the victim's health or safety. *McClendon v. City of Columbia*, 305 F.3d 314, 326 and n. 8 (5th Cir. 2002). *See also Hernandez ex rel Hernandez v. Texas Department of Protective and Regulatory Services*, 380 F.3d 872, 880-881 (5th Cir. 2002).

Thus, the issue is whether the specific actions complained of here which occurred after the plaintiff filed his bankruptcy petition on September 11, 2001, that is, Gaudet's alleged stalking and harassing of the plaintiff, "shocks the conscience." While Gaudet's alleged actions might well violate state tort law, the Due Process Clause does not make actionable under Section 1983 all state torts committed by an actor wielding state power. *City of Sacramento v. Lewis, supra.*

The actions complained of here allegedly committed by Gaudet including driving by the plaintiff's residence in his sheriff's vehicle, parking his sheriff's vehicle and watching plaintiff and using his sheriff's vehicle to "peel out", while perhaps irritating and annoying, do not rise to the level of "conscience shocking". Clearly none of these acts show " knowledge of, and disregard for, an excessive risk" to Darbonne's health or safety. *McClendon,* 305 F.3d at 326 and n. 8.Therefore, the allegations made against Gaudet do not violate the Due Process Clause of the

Fourteenth Amendment and are not cognizable under Section 1983.

Finally, plaintiff alleges that Gaudet acted in concert with state prosecutorial authorities in prolonging state criminal charges against Darbonne after he filed for bankruptcy in September 2002. There is simply no factual support in this record for that allegation. Plaintiff has failed to factually show how Gaudet, a deputy sheriff, conspired with the district attorney to prolong the plaintiff's prosecution on these charges. The District Attorney alone has the power to formally charge a defendant with a criminal offense and to prosecute or dismiss those charges. Allegations alone, without supporting facts properly presented in opposition to a motion for summary judgment, are insufficient to defeat the motion. Fed.R.Civ.P. 56(e).

To the extent that the plaintiff alleges a conspiracy between the state officers and non-state office holding parties, that claim also fails. A conspiracy by itself does not give rise to a claim for relief under Section 1983. Rather, there must be a conspiracy under color of state law to violate federally protected rights. *Pfannstiel v. City of Marion*, 918 F.2d. 1178 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas,* 973 F.2d 449 (5th Cir. 1992). As set out above, no federally protected rights of plaintiff were violated under color of state law after the filing of the bankruptcy petition. Additionally, there is no fact pointed to by plaintiff after he filed bancrupcy which would tend to prove such a conspiracy existed after that date.

Apparently, the crux of the plaintiff's complaints is that the defendants conspired to falsely arrest and imprison him in order to prevent the plaintiff from obtaining the custody of his children. The evidence adduced by the plaintiff is absolutely devoid of facts to support any such claim. It is not clear from the evidence adduced by the plaintiff whether or not he had, at the pertinent times, the custody of his children.

Assuming only for the sake of his argument that the plaintiff could prove that his arrests on December 4, 2001 and in August, 2002 were pursuant to such a conspiracy, there is no evidence that the conspiracy extended after his arrests. The plaintiff has adduced no evidence of any act after he filed bankruptcy in furtherance of any such conspiracy. If any such conspiracy existed, it apparently ended with the arrests of the plaintiff.

In order to attempt to show that the alleged conspiracy extended beyond the date of his last arrest and therefore after he filed for bankruptcy, the plaintiff argues that Gaudet conspired with the district attorney to keep Darbonne's prosecution ongoing. There is absolutely no factual support for that argument. As was noted above, the sole authority to bring criminal charges, to pursue such charges and to dismiss such charges belongs to the district attorney. The plaintiff has produced no evidence of a conspiracy between Gaudet and the district attorney and has produced

no evidence that the charges were pursued by the district attorney because of Gaudet. Indeed, some of the charges were dropped. While the court must consider the evidence in the light most favorable to the nonmovant, improbable inferences and unsupported speculation is not sufficient to defeat a motion for summary judgment. *Brown, supra.* Gaudet's motion for summary judgment will therefore be granted.

As to Sheriff Hebert, Darbonne alleges that he failed to provide adequate training, re-training, and supervision of Gaudet, as well as to prevent the acts and omissions described in the pleadings. (rec. doc. 24, ¶ V). There is absolutely no evidence to support a Section 1983 claim against Sheriff Hebert. The plaintiff has wholly failed to show any active participation by Sheriff Hebert and has not supported, factually, his claim that Sheriff Hebert failed to properly train Gaudet or that the Sheriff's office had a practice of allowing harassment. Proof of this nature is required to maintain a Section 1983 claim against Sheriff Hebert since the Sheriff's office is not vicariously liable under Section 1983 for the action of Gaudet. *Mouille v. City of Live Oak, Tex.* 977 F.2d 924, 929 (5th Cir. 1992) (citing *Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 691-95, 98 S.Ct. 2018, 2036-38, 56 L.Ed.2d 611 (1978)).

Thus, the Court finds that Darbonne has not established a claim against Gaudet or Hebert under § 1983 and summary judgment on the § 1983 claims as to those two

defendants is **GRANTED**.

Since the court has granted the motion for summary judgment filed by Hebert and Gaudet, since the court has found that no conspiracy to violate Section 1983 has been shown and since neither Richard Daigle nor Johnette Daigle are state officers, the Section 1983 claims against Richard Daigle and Johnette Daigle must also be dismissed since plaintiff cannot, as a matter of law, prevail on those claims.

## State Law Claims

All federal law claims asserted against defendants have been dismissed. Accordingly, no federal question remains before this court.

A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Indeed, when a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999) citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989). However, the dismissal should be without prejudice. *Id.*

Dismissal is particularly appropriate when the remaining state law questions present difficult, novel or complex state law issues. *Parker & Parsley Petroleum v. Dresser Industries*, 972 F.2d 580, 589 (5th Cir. 1992). The questions of state law presented in this case clearly fall within that category. Thus, the undersigned declines

-21-

supplemental jurisdiction over plaintiff's state law claims asserted against all defendants. Those claims will be dismissed without prejudice.

### Conclusion

Based on the foregoing reasons, the Motion for Summary Judgment is hereby **GRANTED,** and all federal claims asserted against the defendants are **DISMISSED WITH PREJUDICE.**

Signed this **22** day of _June_____, 2005, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE